Filed 5/3/21  Segerstrom v. Yergovich CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THEODORE SEGERSTROM et al., | D076373 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2016-00002434-CU-BT-CTL) |
| JEFFREY YERGOVICH et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Affirmed.

Law Offices of Kevin M. Tripi, Kevin M. Tripi; The Ehrlich Law Firm and Jeffrey I. Ehrlich for Plaintiffs and Appellants.

Pacific Employment Law and Joseph P. Mascovich; Diepenbrock & Cotter, John P. Cotter and Brian J. O'Connor for Defendants and Respondents.

INTRODUCTION

Dissatisfied with the restoration of seven Shelby Mustangs, Rae and Theodore "Ted" Segerstrom (collectively, the Segerstroms) sued Jeffrey Yergovich and R&A Motorsports, Inc. (R&A; collectively, Defendants) for

breach of contract, negligence, and violation of the Unfair Competition Law (UCL; Bus. & Prof. Code, § 17200, et seq.), among other claims. Following trial, the jury found for Defendants on all causes of action. The Segerstroms challenge this outcome, contending (1) the trial court improperly denied their motion for judgment notwithstanding the verdict (JNOV) because there was substantial evidence to support their breach of contract claims; (2) the trial court improperly granted a motion in limine excluding testimony by non-party customers with allegedly similar experiences; and (3) the court erroneously denied their motion for nonsuit regarding the UCL claim as a result of the exclusion of evidence in connection with the motion in limine.

We conclude the trial court's rulings on the motions challenged were proper, and we will affirm.

BACKGROUND AND PROCEDURAL FACTS

The Segerstroms are Shelby Mustang car collectors. Shelby Mustangs are high performance vehicles made by Ford between 1965 and 1970 in limited numbers. Ted Segerstrom wanted to have a red convertible KR Shelby Mustang, identified by the last four digits of its vehicle identification number as 4266, restored in honor of his daughter, who had passed away in 1993. Based on a recommendation from someone from Shelby America, Ted's assistant Lawrence Williams reached out to Yergovich, who restores Shelbys. In January 2005, Ted had Williams place car 4266, which was disassembled, on a trailer and drive it to Scottsdale, Arizona so that he could show it to Yergovich, the owner of R&A Motorsports, Inc. Yergovich was in Arizona because a car he had restored was being sold at auction.

The Segerstroms had dinner with Yergovich, then they showed him car 4266 in the trailer in the parking lot. The parties discussed Yergovich restoring the vehicle, and Williams drafted an agreement, under the terms of

2

which Yergovich would take possession of the car, motor, and related parts "for purpose of Concourse restoration of Shelby Mustang." The agreement did not define the term "concourse restoration."

The restoration of vehicle 4266 took nearly two years and cost about $240,000. It initially had 14 issues to correct, but after Yergovich addressed the items, the car looked to Ted like it had been restored to a factory-assembly-line condition; it looked brand new.

Between 2007 and 2013, the Segerstroms hired Defendants to restore six additional Shelby Mustangs, orally extending the terms of the original contract. The Segerstroms paid $1,230,000 for the restoration of the seven vehicles.

Defendants finished the restoration of vehicle 1711 in 2015, and the Segerstroms discovered a leak in the transmission shortly after it was delivered. Yergovich traveled to California to repair the leak. About a month later, car 1711 began leaking transmission fluid again. Yergovich offered to repair the vehicle in Nevada and have a third party certify that the repair was completed properly, but the Segerstroms refused his offer.

Instead, the Segerstroms brought the vehicle to Tim Lea, another restorer, to fix the transmission problem. After Lea repaired the leak, he gave the Segerstroms a list of additional problems with vehicle 1711. The Segerstroms then hired Jeff Speegle, who had been a judge with the Shelby America Automobile Club (SAAC) and the Mustang Club of America (MCA), to examine the other six vehicles and to document any issues with them, which Speegle did, looking at the vehicles as if they had rolled off the factory line.

The Segerstroms hired Lea to re-restore the seven vehicles using a standard of "concours trailered standards with upgrades." To complete these

restorations, Lea stripped away Defendants' restoration work through media blasting.

The Segerstroms filed a lawsuit against Defendants and filed an amended complaint in October 2016. The first amended complaint alleged eight causes of action: (1) breach of contract; (2) negligence regarding all seven cars; (3) negligence regarding post-restoration repairs to car 1711 and car 2506; (4) conversion; (5) promises made without intent to perform; (6) intentional misrepresentation; (7) negligent misrepresentation; and (8) unfair competition.

To support their unfair competition claim, the Segerstroms had planned to introduce testimony from four former clients whose Shelby restoration experiences with Defendants were unsatisfactory. Defendants filed a motion in limine to exclude such testimony, and the court granted the motion, excluding the evidence from the case-in-chief, but permitting it for purposes of impeachment.

At trial, the Segerstroms testified regarding their understanding of the quality of restoration Defendants had agreed to. They also called witnesses to testify about the quality of the completed restorations, including the engines in the seven vehicles.

At the close of the case-in-chief, Defendants moved for a nonsuit on the unfair competition cause of action, and the trial court granted the motion.

The defense called witnesses to testify regarding the quality of restoration, including the engine work completed as part of the restorations and Defendants' decisions not to rebuild or replace some original parts.

Robert Perkins, who had served as the national head judge for the concours category for the SAAC since 2015, testified that restorers look to the club rules and regulations as a guide during their restoration and that it was

4

common in the industry to use the car club standards as the standards for restoration.

The MCA and the SAAC hold competitions for Shelby Mustang automobiles, including the Mid-America Ford Nationals, and the clubs certify the judges who evaluate the restored cars. The MCA has three categories for judging: thoroughbred, concours-trailered, and concours-driven.

The thoroughbred class is the highest class. It does not allow reproduction of parts in the vehicles; they must be original, date-coded correct parts, and finishes must be correct, natural finishes, not replicas. The concours-trailered class allows for reproduction of parts and for finishes on parts to replicate original surfaces. Although original finishes are not required, often judges and restorers prefer the original parts if they are in good condition. The standard of perfection in the MCA concours-trailered class is 97 percent to earn a gold rating.

The concours-driven category applies to cars that are driven to events rather than trailered there, and those cars do not require as much detail on certain areas of the vehicles.

The SAAC is similar, though its classes are defined as divisions, with Division 2 being comparable to the MCA concours-trailered division. To earn the highest award in that category, a car must earn 95 percent of the points available.

Following the nearly-two-month trial, the jury returned a special verdict in favor of Defendants, concluding Defendants had not failed to do anything required by the contract and had not engaged in negligence or fraud.

The Segerstroms moved for JNOV and a new trial, claiming that Yergovich admitted to completing substandard work and arguing the

5

evidence of defective work on the cars entitled the Segerstroms to JNOV or new trial on the contract and negligence claims. These motions claimed the Segerstroms had proved that Yergovich promised "factory assembly line" restorations. Defendants argued the jury had heard conflicting evidence about the restoration standard and their compliance with it, so the jury's verdict was supported by substantial evidence. The court denied the motions.

The verdict was entered May 7, 2019, and judgment was entered May 9, 2019. The Segerstroms timely appealed.

DISCUSSION

A. Judgment Notwithstanding the Verdict (JNOV)

On appeal from the denial of a JNOV motion, we review the record de novo and make an independent determination as to whether there is substantial evidence to support the jury's findings. (*Pacific Corporate Group Holdings, LLC v. Keck* (2014) 232 Cal.App.4th 294, 309; *Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 284.) Our review is limited to determining whether there is substantial evidence that supports the jury's verdict. (*Begnal v. Canfield & Associates, Inc.* (2000) 78 Cal.App.4th 66, 72.) We accept as true the evidence supporting the verdict; we disregard conflicting evidence, and we indulge every legitimate inference that supports the verdict. (*Ibid.*) If sufficient evidence supports the jury's verdict, we must uphold the denial of the JNOV motion. (*Ibid.*)

The issue presented here is whether the jury's verdict finding that Defendants did not breach an implied contractual duty of care is supported by substantial evidence in the record. The Segerstroms contend the undisputed evidence demonstrates a breach of the duty to perform the automobile restorations "completely and with reasonable care" under the concours-trailered standard and ask us to reverse the trial court's denial of

6

their partial JNOV on the issue of breach of contract. Defendants argue this is a change in the theory of liability improperly raised on appeal, and they also maintain that substantial evidence supports the jury's verdict.

### 1. *Theory of Trial Doctrine*

Under the theory of trial doctrine, an appellant may not raise for the first time on appeal issues that differ from the trial theory unless there has been a post-judgment change in the law or the new theory involves only a question of law that was not actually or potentially open to question at trial. (*Marsango v. Automobile Club of Southern California* (1969) 1 Cal.App.3d 688, 694.) Defendants contend that because the Segerstroms argued at trial that the contract called for restoration to a factory-line standard, not simply a concours-trailered standard, they cannot now argue that the record demonstrates a failure to restore the cars to the concours-trailered standard. Defendants base their conclusion on the testimony elicited by the Segerstroms' attorney, which focused on whether Defendants restored the car to factory-assembly-line condition.

Defendants argue that because the Segerstroms' witnesses did not explicitly address the concours-trailered standard in their testimony on direct examination, that theory was not introduced. And further, had it been introduced as a theory, Defendants could and would have introduced evidence to rebut such a claim.

Whether the parties had agreed to restoration to the factory-line standard or the concours-trailered standard was itself a dispute the jury had to resolve; thus, there was reason for each party to introduce evidence regarding both standards. Indeed, the defense repeatedly elicited testimony regarding whether the work met concours-trailered requirements.

7

Further, the special verdict forms were ambiguous regarding the standard the parties agreed to, which allowed the jury to determine for itself whether the factory-line standard or the concours-trailered standard governed the relationship. Once the jury determined what standard the agreement employed, it was able to evaluate if Defendants had failed to restore the vehicles to that agreed-upon standard. Because the jury considered the concours-trailered standard in reaching its verdict, it is not a new theory on appeal.

Finally, the parties appear to agree the jury applied the concours-trailered standard in reaching its conclusion that Defendants did not "fail to do something that the contract required them to do." Thus, it is not inappropriate for the Segerstroms to now argue there was not substantial evidence to support such a conclusion.

### 2. *Substantial Evidence Supports the Verdict*

We next consider whether substantial evidence supports the jury's verdict. Defendants argue the breach of contract claims use the same standard of care as the negligence claim, and the Segerstroms' failure to challenge the negligence verdict prevents them from arguing there was any breach of contract. The Segerstroms contend that Defendants were obligated to perform the work "completely" and to do so with "reasonable care"; thus, the breach of contract claim is not governed by the same standard of care as the negligence claim.

The jury instruction for the implied contractual duty claim was a modified version of CACI No. 328, which stated that the contracts implied performance would "be done completely and with reasonable care." The jury instruction for the negligence claim used a modified version of CACI No. 401 and described negligence as the "fail[ure] to use the skill and care that a

8

reasonably careful automobile restorer would have used in similar circumstances."

Although the standard of care provided under both the implied breach of contract and the negligence causes of action require the services to be performed in a competent and reasonable manner (*North American Chemical Co. v. Superior Court* (1997) 59 Cal.App.4th 764, 774) and to use "the care, skill and knowledge necessary to do the job in a good and workmanlike manner" (*Roscoe Moss Co. v. Jenkins* (1942) 55 Cal.App.2d 369, 377), the Segerstroms maintain that under the breach of contract claim, Defendants were obligated to perform the work not only with "reasonable care," but also "completely." In closing arguments, the Segerstroms' attorney argued the Defendants did not "do *the work* they said they were supposed to do" in addition to arguing that Defendants owed a duty to do the work "*the way* that the contract said they were supposed to do them." Although we question whether a reasonably careful automobile restorer in similar circumstances would have incompletely restored the vehicles, even if we treat the standards of care as distinct, the outcome is the same because there is substantial evidence to support the jury's verdict.

In their appeal, the Segerstroms detail problems and issues with each of the seven vehicles to support their argument that Defendants failed to perform the restoration of each of the cars "completely and with reasonable care." Among their complaints is the existence of perforations in the metal of a vehicle, the use of filler and paint cover, nonfunctional or rotted window tracks, pitting on various surfaces of the car, transmission leaks, holes in some sheet metal, defective battery trays, rust damage, and dents in bottoms of vehicles and on frame rails. The Segerstroms argue these issues provide

9

proof of materially deficient work in violation of their contract, even under the concours-trailered standard of restoration.

Defendants provided testimony regarding some of these flaws, in some cases arguing that they were not properly characterized as problems and in other cases suggesting that the issues were the result of poor maintenance by the Segerstroms over the intervening years rather than by incomplete or substandard restoration by Defendants at the time of delivery. Defense counsel elicited testimony that the standards for restoration had changed over the intervening years; that restoration technology, methods, and parts had changed and improved over time; that some of the decisions regarding whether or not to replace or rebuild parts of the vehicles were judgment calls based on the value of retaining the original parts; and that some of the issues, like transmission leaks and rust, could be explained by the passage of time coupled with improper or incomplete maintenance. Thus, Defendants challenged whether the identified problems were issues at the time of delivery and whether they rose to a level of material deficiency at all.

Further, Defendants countered the Segerstroms' claims that these issues meant they had "fail[ed] to do something that the contract required them to do" because the contract required them to restore the vehicles to concours-trailered standards, and Defendants had done so. In particular, Defendants' expert testified vehicles had met concours-trailered standards at the gold or high silver level based on the standards at the time of restoration completion,[1] and one of the Segerstroms' experts likewise acknowledged

---

[1] None of the experts drew a conclusion regarding whether vehicle 0532 met the standards to earn a concours-trailered rating because the engine and transmission were kept separate from the rest of the car at the request of the Segerstroms. Perkins did not testify regarding the concours-trailered rating he believed car 1044 would earn.

10

vehicles met concours-trailered standards at the bronze, silver, or gold levels.[2]

Thus, even taking into consideration all the evidence the Segerstroms presented, listing the complaints and concerns with the work Defendants completed, there was substantial evidence to support the jury's conclusion that Defendants met their contractual burden under the concours-trailered standard, so the court appropriately denied the request for JNOV.

## B. Motion in Limine

The Segerstroms first argue that the court improperly granted a defense motion in limine, which resulted in the exclusion of testimony by four of Defendants' other customers regarding their vehicle restoration experiences with R&A. They contend the exclusion of this evidence was improper because it prevented them from presenting any evidence to support their UCL cause of action.

We typically review a trial court's evidentiary decisions for an abuse of discretion. (*Twenty-Nine Palms Enterprises Corp. v. Bardos* (2012) 210 Cal.App.4th 1435, 1447.) There is no blanket prohibition on the use of the in limine proceeding to decide a dispositive motion (*K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.* (2009) 171 Cal.App.4th 939, 950-951), and courts have inherent power to use motions in limine to dispose of a claim. (*Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1595.) However, when a motion in limine is used to dispose of an entire cause of action, it triggers a more rigorous standard of review, with inferences and conflicts of evidence resolved in favor of the nonmoving party. (*Kinda v. Carpenter* (2016) 247 Cal.App.4th 1268, 1282, 1286-1287.)

---

[2] Speegle did not testify regarding the concours-trailered rating he believed car 0128 would earn.

11

Here, however, the issue is not simply a conflict in the evidence or inferences to draw. The motion in limine sought to exclude testimony under Evidence Code[3] section 1101, subdivision (a), which prohibits the introduction of character evidence to prove a defendant's propensity to act badly. (*Clark v. Optical Coating Laboratory, Inc.* (2008) 165 Cal.App.4th 150, 174.) Evidence is properly excluded when bad conduct in one circumstance suggests a propensity to act badly in another circumstance. (*Ibid.*)

In their opening brief, the Segerstroms do not argue that section 1101 was inapplicable to the evidence about the other customers they sought to introduce. The Segerstroms maintain that this evidence was necessary and relevant to the UCL claim because it would demonstrate a "practice of 'knowingly performing grossly substandard restoration work.' " In other words, the purpose identified by the Segerstroms for introducing this evidence is precisely the type of evidence prohibited by section 1101, subdivision (a).

In their reply brief, the Segerstroms argue explicitly for the first time that an exception found in section 1101, subdivision (b) is applicable here, contending that R&A's conduct in advertising one type of restoration and providing a lower quality restoration than promised violates the UCL because it shows a pattern of an unfair business practice. However, the Segerstroms forfeited this argument by failing to raise it in their opening brief. (*High Sierra Rural Alliance v. County of Plumas* (2018) 29 Cal.App.5th 102, 111; see, e.g., *Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948 ["failure to provide legal authorities to support arguments forfeits contentions of error"]; *SCI California Funeral Services, Inc. v. Five Bridges*

---

3      Further unspecified section references are to the Evidence Code.

*Foundation* (2012) 203 Cal.App.4th 549, 573, fn. 18 [cannot salvage forfeited argument by addressing it in reply].)

Even were we to consider the Segerstroms' arguments on their merits, we would not conclude the court's ruling was erroneous. Certainly, there are occasions when a defendant's pattern of conduct can be used appropriately to demonstrate an unfair business practice, such as in cases where a plaintiff brings a representative or class action. (See, e.g., *Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 478, 480 [pattern or practice of denying coverage for behavior and speech therapy to members with autism spectrum disorders brought as class action]; *People v. Dollar Rent-A-Car Systems, Inc.* (1989) 211 Cal.App.3d 119, 122-123 [unfair competition action brought by attorney general based on pattern of false or misleading statements].) However, this is an individual action, not a representative one. Thus, the experiences of other customers are not relevant to the Segerstroms' experience and could improperly prejudice the jury. (See § 352.)

The Segerstroms rely on *R & B Auto Center, Inc. v. Farmers Group, Inc.* (2006) 140 Cal.App.4th 327, 359 (*R & B Auto*) to support their claim that testimony from other customers is relevant and appropriate to show unfair competition in this case. In *R & B Auto*, the plaintiff argued a defendant's practice of selling new-car-only insurance coverage to dealerships that sold only used cars violated the UCL. (*R & B Auto*, at pp. 357-358.) Defendants sought to exclude testimony of witnesses from other dealerships that they had received express representations that the policies would provide coverage for their used vehicles. (*Ibid.*) Defendants argued the witnesses had not been named in discovery and so should be excluded. (*Ibid.*) The trial court agreed, and the result was the exclusion of nearly all the evidence that would have shown this pattern and practice, which was underlying the unfair

13

competition claim. (*Ibid.*) The court subsequently dismissed the UCL cause of action. (*Ibid.*) The appellate court remanded the matter, reversing the nonsuit decision and directing the trial court to revisit its evidentiary rulings. (*Id.* at pp. 361-362.)

However, *R & B Auto* is distinguishable. There, the plaintiffs sued before Proposition 64 amended the standing requirements of the UCL.[4] Although the plaintiff had not initially made class or representative claims, on appeal the plaintiff argued that it could meet class certification requirements based in part on the testimony of the three witnesses that had been excluded. (*R & B Auto*, *supra*, 140 Cal.App.4th at p. 361.) The appellate court granted the plaintiff's request so it could show compliance with Code of Civil Procedure section 382 regarding class representation. (*R & B Auto*, at p. 361.) In other words, the plaintiff acknowledged that in order to introduce the testimony from the additional witnesses, it needed to bring a class action.

The posture of the case before us is markedly different. The Segerstroms did not plead the UCL cause of action as a representative one. Instead, they argue that the unfair business practice here was based on false promises to them and that a UCL claim can be based on a single instance of

---

[4] Prior to the enactment of Proposition 64 in 2004, a plaintiff did not have to show actual injury, and a representative action did not have to be brought as a class action. (*Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court* (2009) 46 Cal.4th 993, 1000.) Proposition 64 amended the UCL to allow private representative claims only by those who satisfied new standing requirements and complied with Code of Civil Procedure section 382 (*Amalgamated Transit Union*, at p. 1000), meaning the requirements for a class action must be met (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 980).

an unfair business practice, even with only one victim.[5]  (See *Blanks v. Seyfarth Shaw LLP* (2009) 171 Cal.App.4th 336, 364 (*Blanks*).)  Section 1101, subdivision (a) does not preclude evidence of Defendants' conduct as it relates to the Segerstroms; thus, the UCL claim is not foreclosed merely by the application of this evidentiary rule.

Moreover, even were the evidence not prohibited by section 1101, the court would be required to engage in a further inquiry under section 352. (*Brown v. Smith* (1997) 55 Cal.App.4th 767, 791.)  Section 352 gives the court discretion to exclude evidence when "its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

Here, the introduction of the excluded evidence would have run afoul of the concerns raised by section 352.  Ensuring the evidence offered by other customers demonstrated a true pattern or practice would necessitate time-consuming testimony about the sophistication of the other customers, the scope of their relationships with R&A, what specifically was agreed to in their contracts, and the quality of the finished work.  Not only would that additional testimony have added to an already-lengthy trial, but the evidence would have had limited relevance regarding what happened in the instant

---

[5]      In opposition to the motion in limine, the Segerstroms argued that Defendants had a practice of stealing rare, valuable parts off the vintage vehicles, of performing grossly substandard restoration services, and of engaging in billing fraud.  However, as we explain *post*, they do not repeat these claims on appeal or explain whether evidence of these issues was sufficient to warrant denial of the motion for nonsuit.  (*Okorie v. Los Angeles Unified School Dist.* (2017) 14 Cal.App.5th 574, 600 [matters lacking in legal discussion is forfeited]; *Lonely Maiden Productions, LLC v. GoldenTree Asset Management, LP* (2011) 201 Cal.App.4th 368, 384 [matters not adequately supported with record citations deemed forfeited].)

case, potentially confusing issues and misdirecting the jury. We cannot say, taking the limited probative value and the substantial potential for undue prejudice in these circumstances, that excluding the evidence was a decision made in error.

## C. Nonsuit

The Segerstroms argue the court erred in granting Defendants' nonsuit for the UCL claim based on lack of evidence. They contend their cause of action for unfair competition was hamstrung by the court's decision to grant the motion in limine, resulting in the exclusion of testimony by other customers of R&A.

### 1. *Standard of Review*

A defendant is entitled to a nonsuit if the trial court determines that, as a matter of law, the evidence the plaintiff has presented is not sufficient to permit a jury to find in the plaintiff's favor. (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 291.) We review a ruling on a motion for nonsuit for substantial evidence (*OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.* (2007) 157 Cal.App.4th 835, 845 (*OCM Principal*)), accepting the evidence most favorable to plaintiff as true and disregarding conflicting evidence (*Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830, 838-839; *Nally*, at p. 291). However, "[a] mere 'scintilla of evidence' does not create a conflict for the jury's resolution; 'there must be *substantial evidence* to create the necessary conflict.' " (*Nally*, at p. 291.) Substantive evidence is not synonymous with any evidence; it must be reasonable, credible, and of solid value. (*OCM Principal*, at p. 845.)

### 2. *The Unfair Competition Law*

The UCL is an equitable means through which a private individual can bring suit to prevent unfair business practices and restore money or property

16

to victims of such a practice. (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1150 (*Korea Supply*).) To bring a UCL claim, a plaintiff must demonstrate economic injury resulting from the unfair competition. (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 323, 326.) When a plaintiff alleges false advertising or misrepresentation, he or she must show that the misrepresentation was the immediate cause of the injury-producing conduct by showing reliance on the representation. (*Id.* at p. 327.) Additionally, "a private plaintiff must file a class action in order to represent the interest of others." (*Zhang v. Superior Court* (2013) 57 Cal.4th 364, 372 (*Zhang*).) Thus, "[p]rivate plaintiffs must demonstrate economic injury caused by the alleged unfair competition, and may not represent the interest of others without meeting the requirements for class action." (*Id.* at p. 382.)

The UCL provides grounds for relief when a business practice is unfair or fraudulent, even if that practice is not also unlawful. (*Zhang, supra,* 57 Cal.4th at p. 370.) To demonstrate a fraudulent practice, a plaintiff must show he or she "was likely to be deceived and suffered economic injury as a result of the deception." (*Id.* at p. 380.) A business practice can be deemed

unfair even if it is not expressly prohibited by another law.[6] (*Korea Supply*, *supra*, 29 Cal.4th at p. 1143; *Cel-Tech*, at p. 180.)

As the Segerstroms note, "the UCL is not limited to cases involving 'systematic misconduct' by the defendant" because the definition of "unfair competition" includes any unlawful, unfair, or fraudulent "business act or practice." (Bus. & Prof. Code, § 17200.) Thus, "a UCL claim may be based on a single instance of unfair business practice" (*Zhang*, *supra*, 57 Cal.4th at p. 383) "even if the unlawful practice affects only one victim" (*Blanks*, *supra*, 171 Cal.App.4th at p. 364).[7]

---

[6] The Supreme Court has not defined "unfair" in the context of actions by consumers alleging fraudulent or unlawful business practices or unfair, deceptive, untrue, or misleading advertising. (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 187, fn. 12 (*Cel-Tech*).) Following *Cel-Tech,* this court explained that whether the *Cel-Tech* definition of "unfair" should apply to consumer injuries has divided courts. (*Puentes v. Wells Fargo Home Mortgage, Inc.* (2008) 160 Cal.App.4th 638, 646-647; see also *Bardin v. DaimlerChrysler Corp.* (2006) 136 Cal.App.4th 1255, 1274 [urging Legislature and Supreme Court to clarify scope of definition of "unfair"].) Some courts continue to evaluate fairness by considering the business practice's impact on its victim, balancing that against the justifications and motives of the wrongdoer. (See *Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 718-719.) However, this definition presupposes a finding that a particular business practice existed, and here Defendants challenge the very existence of the alleged practice of "knowingly performing grossly substandard restoration work."

[7] *Zhang* was decided on demurrer. The court noted that at that point, it was not concerned with "how Zhang might go about proving her claim" because "the possible difficulty of proving the plaintiff's allegations is not a relevant consideration on a review of a demurrer ruling." (*Zhang, supra*, 57 Cal.4th at p. 383.) Although the case before us is at a procedurally different point, the general rule that a UCL claim can be based on a single instance of an unfair business practice is applicable.

## 3. *Additional Facts*

At the close of the case-in-chief, Defendants moved for a nonsuit on the UCL cause of action. Defendants argued that the language upon which the Segerstroms based their fraud or deceptive advertising claim, that the vehicles would be restored so they were "just like it left the factory," did not appear on R&A's website until after 2013.[8] They also argued any such claims were simple puffery, and the standard the parties' contract used for the restoration was concours-trailered.

Before it granted the nonsuit, the trial court acknowledged that it was obligated to take every inference concerning the evidence presented in a light most favorable to the plaintiffs. Still, it explained there "was not sufficient evidence, triable issues of fact presented in the form of evidence" to place the matter before the jury. The court commented that the key issue appeared to be the standard of restoration required by the parties' agreement, that the complaint did not present as one regarding unfair competition, and that the evidence actually presented in the case-in-chief did not bear out a UCL cause of action.

## 4. *Analysis*

The Segerstroms contend the trial court's ruling on the motion in limine precluded them from presenting testimony that would have supported their UCL claim, and the nonsuit was the result of the exclusion of the

[8]    The Segerstroms also argued in their briefing that they had presented evidence showing that Yergovich removed and kept valuable parts from their cars. The Segerstroms do not raise similar arguments on appeal and we therefore do not consider them in reaching our conclusion. We do note, however, that Lea's admission that he did not know what happened to the parts and the Segerstrom's failure to produce evidence that Defendants received any of the allegedly stolen parts can hardly be described as " ' "reasonable . . . , credible, and of solid value." ' " (*OCM Principal, supra*, 157 Cal.App.4th at p. 845.)

19

testimony by former R&A customers. While the court's ruling on that motion explains the lack of evidence by *other* customers regarding R&A's business practices, it did not prevent the Segerstroms from introducing evidence regarding their *own* experiences with R&A as a way to prove a UCL cause of action.

The opening brief argues that they could have shown that R&A's business practices were fraudulent if they had been permitted to present testimony from former customers who were misled about the restoration standard promised by R&A and about the quality of work that occurred. And they argue that the testimony of former costumers likewise would have established an unfair business practice because it would have shown R&A had a practice of using misrepresentation to obtain contracts, then performing substandard work. Similarly, in their reply brief, the Segerstroms argue that Defendants "used false or fraudulent promises to induce Shelby owners to hire them to perform restorations" and then "knowingly performed 'improper, substandard, and unacceptable restoration services.'" But these arguments focus on other parties, not the plaintiffs. The Segerstroms fail to cite in their opening brief any evidence in the record to support their UCL cause of action, instead maintaining that the relevant evidence was excluded through the in limine process.

In their reply brief, the Segerstroms offer one argument for why the court improperly granted the motion for nonsuit that was specific to their experiences: "R&A's advertising was likely to, and in fact did, mislead them as well as other customers—and therefore R&A violated the UCL." And they argue that "R&A's practice of promising a 'factory new' restoration while delivering a restoration of decidedly lower quality would also qualify as an 'unfair' business practice." They point to the R&A website as proof to support

20

their theory that Defendants used false or fraudulent promises to induce them to hire R&A.

However, the uncontroverted evidence demonstrates that the Segerstroms hired Defendants in 2005, and the website was not built until 2013, toward the end of Defendants' relationship with the Segerstroms. So, even though Mr. Segerstrom testified that he believed they were getting what was (eventually) advertised by the website, the website advertisement could not have provided a basis for their beliefs because it did not exist at the time the relationship was formed. Given the lack of substantial evidence to support the UCL cause of action, the trial court properly granted the request for nonsuit.[9]

---

[9] The Segerstroms also address a number of other challenges to their UCL cause of action raised by Defendants in their nonsuit motion, including whether a UCL cause of action was appropriate given the existence of an adequate remedy at law and whether there was standing because Defendants had not retained any of the Segerstroms' property, making restitution impossible. Having already concluded that the nonsuit ruling was proper based on its substantive merits, we decline to address these additional arguments.

DISPOSITION

The judgment is affirmed.  Respondents are entitled to costs on appeal.


HUFFMAN, J.

WE CONCUR:


McCONNELL, P. J.


DO, J.